## IN THE UNITED STATES DISCTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————

| | | |
|---|---|---|
| JOHNNY CASIANO | : | |
| 147 Mercer Street, Apt. 1B | : | CIVIL ACTION |
| Trenton, NJ 08611 | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KAISERMAN COMPANY, INC. d/b/a | : | |
| KAISERMAN COMPANY | : | **JURY TRIAL DEMANDED** |
| 201 South 18th Street, Suite 300 | : | |
| Philadelphia, PA 19103 | : | |
| and | : | |
| CHRISTOPHER DEMARCO | : | |
| 201 South 18th Street, Suite 300 | : | |
| Philadelphia, PA 19103 | : | |
| | : | |
| Defendants. | : | |

———————————————————:

### CIVIL ACTION COMPLAINT

Johnny Casiano (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.      Plaintiff has initiated this action to redress violations by the Kaiserman Company, Inc. d/b/a Kaiserman Company and Christopher DeMarco (hereinafter collectively referred to as "Defendants") of the Age Discrimination in Employment Act ("ADEA" – 29 U.S.C. §§ 621, *et. seq.*), the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101, *et. seq.*), the Fair Labor Standards Act ("FLSA" - 29 U.S.C. § 201 et. seq.), the Pennsylvania Human Relations Act ("PHRA"), the Philadelphia Fair Practices Ordinance ("PFPO"), and applicable

state law(s).[1]  As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

<u>**JURISDICTION AND VENUE**</u>

2.      Plaintiff resides in and is a citizen of New Jersey.

3.      The Kaiserman Company, Inc. d/b/a Kaiserman Company is incorporated in Pennsylvania with headquarters and/or principal place of business in Pennsylvania rendering it a citizen of Pennsylvania.

4.      Christopher DeMarco is, upon information and belief, a resident, citizen, and domiciliary of Pennsylvania.

5.      This Court, in accordance with 28 U.S.C. § 1332, has jurisdiction over Plaintiff's claims because there is complete diversity jurisdiction, as Plaintiff is a citizen of New Jersey and Defendants Kaiserman Company, Inc. d/b/a Kaiserman Company and DeMarco are citizens of Pennsylvania, and the amount in controversy exceeds $75,000.

6.      This action is also being initiated pursuant to federal laws (ADEA, ADA, and FLSA) and therefore, the United States District Court for the Eastern District of Pennsylvania also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States.  This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

7.      This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying

---

[1] Plaintiff intends to amend his instant lawsuit to include claims under the PHRA and PFPO once his administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission ("PHRC").

the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

8.      Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendants conduct business in this judicial district and a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

9.      Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").    Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing his Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

10.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.     Plaintiff is an adult individual with an address as set forth in the caption.

12.     Defendant Kaiserman Company, Inc. d/b/a Kaiserman Company (hereinafter individually referred to as "Defendant KC") is a real estate developer and property management corporation, located at the above-captioned address.

13.     Defendant Christopher DeMarco (hereinafter individually referred to as "Defendant DeMarco"), Community Manager for Defendant KC, is a high-level manager and decisionmaker concerning terms and conditions of employment for employees (including Plaintiff) of Defendant KC, including but not limited to hiring, firing, compensation/payment of wages for work performed, and day to day operations.

14.     At all relevant times herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendants.

## FACTUAL BACKGROUND

15.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

16.     Plaintiff was hired by Defendants on or about November 7, 2024; and in total, he was employed by Defendants for approximately 3 months, until his unlawful termination (discussed in more detail *infra*) on or about January 21, 2025.

17.     Plaintiff worked as a Maintenance Technician 2 in and for Defendant KC's Rittenhouse Claridge building, which is also Defendant KC's headquarters.

18.     As a Maintenance Technician 2, Plaintiff performed maintenance work and lived in a unit on the premises.

19.     All staff and management within Defendant KC's Rittenhouse Claridge location were overseen by Defendant DeMarco.

20.     Plaintiff was a very hard-working employee who performed his job well during his brief tenure with Defendants, until he was unlawfully terminated on or about January 21, 2025, because of his advanced age, his disabilities, and his complaints of/objections to unlawful wage practices.

### -Age and Disability Discrimination-

21.     Plaintiff is a 60-year-old adult male.

22.     Plaintiff has and continues to suffer from several ADA-qualifying disabilities, including blood pressure issues, back (ruptured vertebrae) and knee conditions (and associated conditions/complications), and he would limp at times as a result of the same.

23.     As a result of his aforesaid disabilities, Plaintiff suffers from pain, stiffness, and mobility issues, which (at times) limits his ability to perform some daily life activities, such as walking and moving without pain, climbing, and bending (among other daily life activities).

24.    Despite his aforementioned health conditions and limitations, Plaintiff was able to perform his job duties well.

25.    It was well known by other members of management, including Defendant DeMarco and Assistant Property Manager, Sophia Lambadarios (hereinafter "Lambadarios") that Plaintiff had health issues (made apparent by his mobility issues, including limping), as he had discussed the same with management, and that he was nearly 60 years old at the time of his employment with Defendants.

26.    It was clear to Plaintiff and other employees, including but not limited to Lambadarios, almost from the start of Plaintiff's employment with Defendants, that Defendant DeMarco had a problem with Plaintiff, unrelated to his work, but as a result of Plaintiff's age and/or disabilities.  By way of example, but not intended to be an exhaustive list:

  a.    Defendant DeMarco treated Plaintiff in a rude way;

  b.    Defendant DeMarco was much less pleasant and more irritated in tone and action to Plaintiff than far younger employees;

  c.    Lambadarios witnessed Defendant DeMarco commenting that he "wants to get rid of Johnny," Johnny is "too old," "he was slow," "he is not quite there," and other similar comments indicating that Defendant DeMarco did not think Johnny could keep up with the workload because of his age and/or disabilities, which was completely untrue. *See* Witness Statement of Sophia Lambadarios, attached hereto as "Exhibit A," at p. 2;

  d.    Defendant DeMarco expressed clear disgust when Plaintiff was around or showed up in management's office for basic questions to the point where Plaintiff's presence outright annoyed Defendant DeMarco.  *Id*; and

  e.    Defendant DeMarco selectively enforced policies against Plaintiff.

27.     Plaintiff did his best to ignore the hostility, animosity, and disparate treatment Defendant DeMarco subjected him to and just focus on performing his job duties well; however, he was abruptly terminated on or about January 21, 2025, for completely pretextual reasons – purportedly not performing some job tasks well.

28.     Defendants' purported reason for Plaintiff's termination is completely false and pretextual because (1) Plaintiff was one of the oldest employees working for Defendants at that location, with noticeable health conditions that Defendants were aware of; (2) Plaintiff was treated disparately than younger and/or non-disabled employees; (3) Plaintiff had been a hard-working employee for Defendants, who had been doing a good job; and (4) Lambadarios confirmed that Defendant DeMarco had made many negative comments about Plaintiff's age and/or health conditions suggesting Plaintiff was "too old" and "too slow" to be doing his job (in very close proximity to Plaintiff's termination). *See* Witness Statement of Sophia Lambadarios, attached hereto as "Exhibit A," at p. 2.

29.     Notably, prior to Plaintiff's termination, Lambadarios had been retaliatorily terminated in part for objecting to/complaining of Defendant DeMarco's discriminatory comments and/or treatment of Plaintiff.[2]

30.     There is no doubt that Plaintiff's age and disabilities were motivating and/or determinative factors in Plaintiff's termination, because Plaintiff worked hard and was well liked by Lambadarios and other employees, who believed him to be a good employee (set forth *supra*).

31.     Plaintiff believes and therefore avers that he was terminated because of his advanced age and/or his actual/perceived/record of health conditions.

---

[2] Lambadarios has filed her own charge of discrimination and retaliation pursuant to the ADEA and ADA, on or about February 13, 2025.

**-Wage Violations-**

32.    In addition to the discrimination and hostile work environment that Plaintiff was subjected to by Defendant KC's management because of his age and disabilities, Defendants also violated federal and state wages law by failing to properly pay Plaintiff overtime and for all hours he worked.

33.    Upon his hire, Plaintiff was informed that he was an hourly employee, to be paid at a rate of $29.78 per hour.

34.    While employed with Defendants, Plaintiff was at all times relevant herein unequivocally a non-exempt employee who should have been paid overtime compensation for all hours worked over 40 hours per week at a rate of time and one half.

35.    Throughout his tenure with Defendants, Plaintiff consistently worked between 50 to 60 hours per week, as he was Defendants' on-call technician for emergencies.  However, Plaintiff was only ever compensated for 40 hours per week throughout his employment with Defendants. *See also* Witness Statement of Sophia Lambadarios, attached hereto as "Exhibit A," at p. 2.

36.    Therefore, Plaintiff was <u>never</u> paid at a rate of time and one half for all hours that he worked over 40 in one week.

37.    Plaintiff was also not paid *any* wages for all hours that he worked over 40 in one week.

38.    Additionally, Plaintiff was not compensated for 4 hours of compensable bereavement time promised to him by Defendant DeMarco following the death of his mother on or about December 5, 2024.

39.    Both Lambadarios and Plaintiff complained to Defendant DeMarco and/or Human Resources ("HR") regarding Defendants' failure to pay proper wages, including overtime, but

management simply dismissed their concerns, advising Plaintiff specifically that he would be paid "later"; however, he was never compensated for the same.  *See also* Witness Statement of Sophia Lambadarios, attached hereto as "Exhibit A," at p. 3.

40.     All of Defendants' actions as aforesaid are without question willful, intentional and in blatant disregard for state and federal laws, as evidenced by Defendant DeMarco also advising Lambadarios (in response to her complaints of illegal pay practices) that "we don't pay overtime," "overtime is not in the budget," and he [Defendant DeMarco] "runs a tight ship," so people are only getting paid for 40 hours.  *See also* Witness Statement of Sophia Lambadarios, attached hereto as "Exhibit A," at p. 3.

41.     Plaintiff is entitled to double damages for any unpaid overtime incurred from in or throughout his employment with Defendants, in addition to all legal fees.[3]  *See* 29 U.S.C. § 216(b)(a prevailing plaintiff "shall" be entitled to attorney's fees).

42.     Upon information and belief, Defendants have and continue to implement a system that results in non-payment of overtime compensation to Plaintiff and other similarly situated employees.

---

[3] *See e.g. Solis v. Min Fang Yang*, 345 Fed. Appx. 35 (6th Cir. 2009) (Affirming award of liquidated damages explaining "under the Act, liquidated damages are compensation, not a penalty or punishment, and no special showing is necessary for the awarding of such damages. Rather, they are considered the norm and have even been referred to by this court as mandatory"); *Gayle v. Harry's Nurses Registry, Inc*., 594 Fed. Appx. 714, 718 (2d Cir. 2014) (Affirming award of liquidated damages explaining there is an automatic "presumption" of liquidated damages and "double damages are the **norm,** single damages the exception," as the burden to avoid liquidated damages is a "difficult burden."); *Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014) (Affirming award of liquidated damages explaining they are the "norm" and "mandatory" unless the employer can establish the very "difficult burden" of subjective and objective attempts at FLSA compliance); *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008) (Affirming award of liquidated damages explaining that the employer mistakenly argues its non-compliance was not willful, misunderstanding the high burden to show affirmative steps of attempted compliance and research of the FLSA and separately that its diligence and belief in non-payment of overtime was also objectively reasonable.); *Chao v. Hotel Oasis, Inc.,* 493 F.3d 26 (1st Cir. 2007) (Affirming award of liquidated damages explaining that they will always be considered the "norm" in FLSA cases); *Lockwood v. Prince George's County,* 2000 U.S. App. LEXIS 15302 (4th Cir. 2000) (Affirming award of liquidated damages explaining they are the "norm" and that an employer may not take an ostrich-like approach and refuse to research its obligations under the FLSA and to objectively explain why it failed to comply with the FLSA); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399 (7th Cir. 1999) (Reversing the district court for not awarding liquidated damages, as doubling unpaid overtime is the rule, not an exception); *Nero v. Industrial Molding Corp*., 167 F.3d 921 (5th Cir. 1999) (Affirming award of liquidated damages, as there is a presumption of entitlement to liquidated damages which are the norm).

43.     Plaintiff was then retaliatorily terminated on or about January 21, 2025, in close proximity to Plaintiff's complaints of overtime and/or wage violations.

44.     Plaintiff believes and therefore avers that he was really terminated because of his complaints regarding Defendants' overtime and wage violations.

45.     Defendants' retaliatory termination of Plaintiff constitutes unlawful retaliation under the Fair Labor Standards Act ("FLSA").

## COUNT I
### Violation of the Age Discrimination in Employment Act ("ADEA")
**([1] Age Discrimination and [2] Hostile Work Environment)**
**-Against Defendant KC Only-**

46.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47.     During his employment with Defendant KC, Plaintiff was treated disparately with respect to policies, work, and termination contrary to individuals substantially younger than him.

48.     Plaintiff was abruptly terminated on or about January 21, 2025, for completely pretextual reasons.

49.     Plaintiff believes and therefore avers that his age was a motivating and/or determinative factor in the termination of his employment with Defendant KC.

50.     These actions as aforesaid constitute unlawful age discrimination under the ADEA.

## COUNT II
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
**(1] Actual/Perceived/Record of Disability Discrimination and [2] Hostile Work Environment)**
**-Against Defendant KC Only-**

51.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52.     Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities.

53.     Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendant KC.

54.     Plaintiff kept Defendant KC's management informed of his serious medical conditions and limitations.

55.     Plaintiff was terminated, on or about January 21, 2025, for completely pretextual reasons in close proximity to notifying Defendant KC's management of the nature of his serious health conditions and limitations.

56.     Plaintiff believes and therefore avers that he was subjected to discrimination and a hostile work environment because of his actual/perceived/record of health conditions.

57.     Plaintiff believes and therefore also avers that his disabilities were motivating and/or determinative factors in Defendant KC's termination of his employment.

58.     Defendant KC's actions as aforesaid constitute violations of the ADA.

**COUNT III**
**<u>Violations of the Fair Labor Standards Act ("FLSA")</u>**
**(Failure to Pay Overtime Wages & Retaliation)**
**-Against Both Defendants-**

59.     The foregoing paragraphs are incorporated herein as if set forth in full.

60.     At all times relevant herein, Defendants are, and continue to be, an "employer(s)" within the meaning of the FLSA.

61.     At all times relevant herein, Plaintiff was an "employee" within the meaning of the FLSA.

62.     The FLSA requires covered employers, such as Defendants, to minimally compensate its "non-exempt" employees, such as Plaintiff, at a rate of 1.5 times the employee's regular rate of pay for each overtime hour that the employee works (*i.e.*, hours in excess of 40 hours in a workweek).

63.    At all times during his employment with Defendants, Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

64.    Defendants knew that Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

65.    Defendants failed to pay Plaintiff 1.5 times Plaintiff's regular rate of pay for all hours that he worked over 40 each workweek.    In fact, Defendants failed to pay Plaintiff any wages for the hours he worked in excess of 40 each week (set forth *supra*).

66.    Plaintiff expressly complained to Defendants about non-payment of overtime compensation.

67.    Defendants retaliated against Plaintiff by terminating his employment.

68.    Any retaliation against Plaintiff for exercising his statutory rights to complain of unpaid overtime was *per se* unlawful.  *See Kasten v. Saint-Gobain Performance Plastics Corp.,* 563 U.S. 1, 131 S. Ct. 1325, 179 L. Ed. 2d 379 (2011) (it is illegal under the FLSA to retaliate against an employee for verbal or written concerns of unpaid overtime compensation within a workplace).

69.    As a result of Defendants' failure to pay Plaintiff the overtime compensation due him, Defendants violated the FLSA and caused Plaintiff to suffer damages in the form of unpaid overtime compensation.

70.    Defendant DeMarco is personally liable for the above violations as he was aware of his overtime obligations, attempted to pay employees intentionally in violation of overtime obligations, and perpetuated an unlawful payroll system.

71.    Plaintiff therefore seeks all remedies permitted under the FLSA for unpaid wages as well as penalties and interest.

**COUNT IV**
**Violations of the Pennsylvania Minimum Wage Act ("PMWA")**
**(Failure to Pay Overtime Wages)**
**-Against Both Defendants-**

72.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

73.     At all times relevant herein, Defendants are, and continue to be, an "employer" within the meaning of the PMWA.

74.     At all times relevant herein, Plaintiff was employed by Defendants as an "employee" within the meaning of the PMWA.

75.     The PMWA requires covered employers, such as Defendants, to minimally compensate its "non-exempt" employees, such as Plaintiff, 1.5 times the employee's regular rate of pay for each hour that the employee works over 40 in a workweek.

76.     At all times during his employment with Defendants, Plaintiff was a "non-exempt" employee within the meaning of the PMWA.

77.     Defendants knew that Plaintiff was a "non-exempt" employee within the meaning of the PMWA.

78.     Defendants failed to pay Plaintiff time and one half for all hours that he worked over 40 each workweek.

79.     Defendant DeMarco is personally liable for the above violations as he was aware of his overtime obligations, attempted to pay employees intentionally in violation of overtime obligations, and perpetuated an unlawful payroll system.

80.     Defendants' failure to pay Plaintiff's overtime compensation as aforesaid constitutes violations of the PMWA.

**COUNT V**
**Violation of the Pennsylvania Wage Payment Collection Law ("WPCL")**
**(43 P.S. §§ 260.3(a)-(b))**
**-Against Both Defendants-**

81.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

82.    Plaintiff had an agreement with Defendants whereby Defendants agreed to compensate Plaintiff for services he performed during his employment.

83.    Defendants failed to compensate Plaintiff for all wages owed during his employment with Defendants.

84.    Plaintiff performed the agreed-upon services for Defendants, and Defendants failed to properly compensate Plaintiff for the services rendered as specified by the Parties' employment agreement (included but not limited to paying Plaintiff for all hours worked).

85.    Defendant DeMarco is personally liable for the above violations as he was aware of his overtime obligations, attempted to pay employees intentionally in violation of overtime obligations, and perpetuated an unlawful payroll system.

86.    These actions as aforesaid constitute violations of the Pennsylvania Wage Payment and Collection Law.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendants are to promulgate and adhere to a policy prohibiting discrimination in the future against any employee(s);

B.    Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.      Plaintiff is to be awarded punitive and/or liquidated damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.      Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____

Ari R. Karpf, Esq. (ID No.: 91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
akarpf@karpf-law.com

Dated: July 24, 2025

# Exhibit A

## WITNESS CERTIFICATION OF SOPHIA LAMBADARIOS

1.      I am an adult individual, and I understand that I am preparing a Certification for a legal matter and that if I knowingly make false statements, I am subject to penalties of perjury. The following statements are true and correct to the best of my knowledge, and they are based upon my personal observations and/or knowledge.

2.      I am an adult female.

3.      I was employed by Kaiserman Company, Inc. (hereinafter "KC") for approximately 3 months, from in or about September of 2024 until in or about December of 2024, as an Assistant Property Manager.

4.      I worked from KC's Rittenhouse Claridge building (and headquarters), located at 201 South 18th Street, Philadelphia, PA 19103.

5.      I personally know Johnny Casiano ("Mr. Casiano") as I worked with him at KC until my unlawful termination (discussed in more detail below).

6.      Mr. Casiano worked for KC as a Maintenance Technician 2 from KC's Rittenhouse Claridge building as well.

7.      All staff within KC's Rittenhouse Claridge building, including Mr. Casiano and me, were overseen by Community Manager, Christopher DeMarco (hereinafter "DeMarco").

8.      During my brief time working with Mr. Casiano, I observed he was a professional and hard worker that really cared about his job and was well thought of by me and his other co-workers.

9.      It was known by me and other members of management, including DeMarco, that Mr. Casiano had some health issues, including back and knee problems and would limp a bit at times.

10.     It was also known by me and DeMarco that Mr. Casiano was almost 60 years old.

11.    I observed that DeMarco had a real problem with Mr. Casiano unrelated to Casiano's actual work or performance, as he performed his job well.

12.    I witnessed DeMarco commenting that he "wants to get rid of Johnny," Johnny is "too old," "he was slow," "he is not quite there," and other similar comments indicating he doesn't think Johnny can keep up with the workload because of his age and/or disabilities– which was not true.

13.    I estimate DeMarco mentioned not wanting Mr. Casiano to work anymore just in relation to his age, being too old, and/or his health conditions at least a dozen times during my employment with KC.

14.    DeMarco expressed clear disgust when Mr. Casiano was around or showed up in our office for basic questions to the point where Mr. Casiano's presence outright annoyed DeMarco.

15.    Additionally, I became aware that I, Mr. Casiano, and other employees were not being paid overtime properly.

16.    Upon my observations and knowledge, DeMarco was manipulating payroll, not paying overtime for on-call work, and not compensating time for meetings or events that were required.

17.    I observed DeMarco handling payroll on multiple occasions, and he would simply log into a Word document that every employee worked 9 to 5 p.m. across the board regardless of how many hours they worked (including overtime) and when they actually clocked in and out.

18.    I also observed that Mr. Casiano worked between 50 to 60 hours per week throughout his employment with KC, as he was the on-call technician for emergencies.  However, Mr. Casiano was only ever compensated for 40 hours per week, regardless of how many hours a week he worked.

19.    I raised concerns with KC's overtime practices being "illegal" at least ten (10) times on behalf of myself, Mr. Casiano, and other employees, even saying there could be a "class action" against KC, but DeMarco would respond to me with statements like "we don't pay overtime," "overtime is not in the budget," and he "runs a tight ship" so people are only getting paid for 40 hours.

20.    I observed Mr. Casiano complain to HR and/or DeMarco as well regarding not being paid for any hours he worked over 40 each week (including overtime hours for emergencies), but management simply dismissed Mr. Casiano's concerns advising him that he would be paid "later," but then never compensated him for the same.

21.    I also advocated for Mr. Casiano, objected to DeMarco's age and/or disability discrimination against Mr. Casiano, and advised DeMarco that Mr. Casiano was doing a good job.

22.    I further complained to DeMarco that he could not just terminate Mr. Casiano because he was older if he was doing his job – which he was.

23.    I was then terminated in or about December of 2024, in retaliation for my objections to/complaints of KC's unlawful payroll and overtime practices, other real estate violations, and age and/or disability discrimination against Mr. Casiano.

24.    I later came to learn that Mr. Casiano was terminated after me in January of 2025.

25.    I do not believe there was (or could be) any legitimate reason to terminate Mr. Casiano based upon what I observed.

26.    Rather, I believe Mr. Casiano must have been terminated for false and discriminatory reasons based on his age and/or disabilities, as it was clear DeMarco was going to find any reason possible to terminate Mr. Casiano for the same – despite that he was doing a good job.

_Sophia Lambadarios_

Sophia Lambadarios

DATE:___7/15/2025___

4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

|  |  |  |
|---|---|---|
| Johnny Casiano | : | CIVIL ACTION |
| v. | : | |
| Kaiserman Company, Inc. d/b/a Kaiserman Company et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                              (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                     (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                                        (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (x )

| | | |
|---|---|---|
| 7/24/2025 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

10/2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: <u>Defendants place of business</u>

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                          Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?          Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?              Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief ***see certification below***
☐ 16. All Other Federal Question Cases. *(Please specify):*_____

*B.* ***Diversity Jurisdiction Cases:***

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

CASIANO, JOHNNY

**DEFENDANTS**

KAISERMAN COMPANY, INC. D/B/A KAISERMAN COMPANY, ET AL.

**(b)** County of Residence of First Listed Plaintiff    Mercer
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product    Product Liability | |    28 USC 157 |    3729(a)) |
| ☐ 140 Negotiable Instrument |    Liability   ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &    Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
|    & Enforcement of Judgment |    Slander    Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'    Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted |    Liability   ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
|    Student Loans | ☐ 340 Marine    Injury Product | |    New Drug Application | ☐ 470 Racketeer Influenced and |
|    (Excludes Veterans) | ☐ 345 Marine Product    Liability | | ☐ 840 Trademark |    Corrupt Organizations |
| ☐ 153 Recovery of Overpayment |    Liability   **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
|    of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards |    Act of 2016 |    (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending |    Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract |    Product Liability   ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** |    Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal    Property Damage |    Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise |    Injury   ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury -    Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) |    Exchange |
| |    Medical Malpractice |    Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee |    Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff |    Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/    Sentence | |    or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability |    Accommodations   ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☒ 445 Amer. w/Disabilities -   ☐ 535 Death Penalty | **IMMIGRATION** |    26 USC 7609 |    Act/Review or Appeal of |
| |    mployment   **Other:** | ☐ 462 Naturalization Application | |    Agency Decision |
| | ☐ 446 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| |    Other   ☐ 550 Civil Rights |    Actions | |    State Statutes |
| | ☐ 448 Education   ☐ 555 Prison Condition | | | |
| |     ☐ 560 Civil Detainee - | | | |
| |      Conditions of | | | |
| |      Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); ADEA (29USC621); FLSA (29USC201)

Brief description of cause:
Violations of the ADA, ADEA, FLSA, PHRA, PFPO and applicable state laws.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.    DEMAND $          CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE   7/24/2025      SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____